UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| THOMAS-ALAN FRIEND,<br><br>Plaintiff,<br><br>v.<br><br>FRYBERGER, BUCHANAN, SMITH & FREDERICK, P.A., ET. AL., SHAWN M. DUNLEY, MATTHEW HENRY HANKA, DAVID LOVASS, JOHN DOE 1 THROUGH 99, & MARY ROE 1 THROUGH 99,<br><br>Defendants, | Civil No. 11-CV-1584 (PJS/LIB)<br><br>**REPORT AND RECOMMENDATION** |

This matter came before the undersigned United States Magistrate Judge upon the Motions of the Defendants to Dismiss the Complaint. A hearing on the Motion was conducted on October 20, 2011. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons outlined below, the Court recommends that the Defendants' Motions to Dismiss be GRANTED.[1]

**I.    BACKGROUND**

The Plaintiff filed his Complaint on June 15, 2011 alleging a number of claims against the Defendants arising out of an allegedly illegal foreclosure action commenced against Plaintiff's property. (Docket No. 1). Defendants Fryberger, Buchanan, Smith, & Frederick ("Fryberger"), Shawn M. Dunley, & Matthew Henry Hanka are the law firm and attorneys that

---

[1] The Plaintiff has also made two motions, a "Notice of Request for Admission Under Rule" asking Defendant Shawn M. Dunlevy to respond within 30 days to a request and admit the genuineness of certain documents and answer all questions within certain documents [Docket No. 18] and a "Supplemental Motion to Supplement Record Unlawful Debt Collection Practices." [Docket No. 19] in which Plaintiff argues that Exhibit 1 to Stephanie Ball's Affidavit is counterfeit and that Plaintiff has never seen a validated note. However, these motions need not be decided in light of the Court's recommendation to grant Defendant's Motions to Dismiss. Plaintiff's counter motions [Docket No. 18 & 19] are denied as moot.

represented Northern State Bank of Virginia in their foreclosure action against the Plaintiff's property.  Defendant David Lovass is an employee of the St. Louis County Sheriff's office who's alleged participation in the foreclosure proceedings undertaken on Plaintiff's property involved performing service of process in his official capacity as a deputy sheriff.

The Court understands the factual basis for the Complaint to be as follows.

Plaintiff's claims appear to be organized into four counts.  Count One seeks to assert claims under the Federal Trade Commission Act (FTCA) citing 15 U.S.C. §§ 5(a); 5(m)(1)(A); 13(b); 16(a); 45(a); 45(m)(1)(A); and 56(a).  Count Two claims cite to the Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. §§ 1692 – 1692p.  Count Three purports to rely on a criminal statute 18 U.S.C. § 474(a).  And, Count Four generally refers without specific citation to the Fair Credit Reporting Act (FCRA), the Truth in Lending Act (TILA), and the Real Estate Settlement Procedures Act (RESPA).

The factual allegations made in Plaintiff's Complaint are sometimes hard to follow, but in summary, it appears to the Court that Plaintiff's claims for equitable and monetary relief against the Defendants all stem from earlier state proceedings to foreclose on the mortgage on Plaintiff's home.  The mortgage was apparently held by Northern State Bank of Virginia, which is not a party to the present action.  The Defendants, the firm of Fryberger, Buchanan, Smith & Fredercik ("Fryberger"), and attorney members of the firm, Shawn M. Dunley and Matthew Henry Hanka, provided legal representation to Northern State Bank of Virginia during the foreclosure action. The Plaintiff's factual allegations and legal conclusions set forth in his Complaint can be best summarized as asserting that the conduct of Defendants Shawn Dunley and Matthew Hanka as part of the Fryberger law firm on behalf of Northern State Bank amount to unlawful debt collection activities and securities fraud.  (Compl. ¶¶ 9, 13-14, 16-18).  The Plaintiff makes no

specific factual allegations in the Complaint regarding the nature of the Defendant David Lovass, but at the hearing on Defendants' motions to dismiss, the only assertion that Plaintiff could make as to any theory for why David Lovass should even be arguably liable with the other Defendants was that Defendant Lovass "somehow" acted in "concert" with the other Defendants during the foreclosure action.

In compensation for his various claims, the Plaintiff seeks equitable relief and money damages in the amount of $58,662,240,000.00/100.

While the factual grounds for the causes of action that the Plaintiff seeks to raise are, as noted, not entirely clear, the Court construes the Plaintiff's complaint liberally as it must. Erickson v. Pardus, 551 U.S. 89, 94 (2007)( pro se pleadings are "to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.")  The Court will consider whether the Plaintiff has stated a valid claim for relief under each of the five statutes cited or referenced by Plaintiff in Counts One through Four of his Complaint.[2]

---

[2] Plaintiff filed a response to the Defendant's motion [Docket No. 17]. In Plaintiff's response, he argues that each Defendant's motion is late because it was not filed timely under LR 5.3 which states that "[a]ll answers and other papers required by Fed. R. Civ. P. 5(d) to be filed shall be filed within 14 days after service thereof; such period is deemed a reasonable time within the meaning of Fed. R. Civ. P. 5(d)."  However, the Court reads this rule to require that the document must be filed with the Court within 14 days after the document was served on the opposing party. Here, the Affidavit of Service by Defendant Lovass states that his motion was served on the Defendant on August 11, 2011, the same day it was filed with the Court.  Therefore, Defendant Lovass did not violate LR 5.4. Likewise the other Defendants filed their motion on July 5, 2011 within 14 days of when they served their motion on July 5, 2011. [Docket No. 8].

     In addition, the Plaintiff argues that Stephanie Ball has a conflict of interest under Rule 7.1 regarding conflicts of interest for current clients.  The Court assumes that the Plaintiff is alleging a violation of the Professional Rules of Responsibility.  The only support for this argument that Plaintiff offers is Ex. A to his response.  However, this document only gives the Fryberger law firm, Stephanie Ball's employer and client, power of attorney for Northern State Bank.  There is no conflict of interest in Ms. Ball representing Defendants Fryberger, Dunley and Hanka in the present matter as Northern State Bank is not a party to the present action.

     The Plaintiff also contends that Attorney for Fryberger Stephanie Ball falsified Exhibit 1 because it reads 869521 rather than 86531 with a gap between the 5 and 3.  It is unclear what precisely Plaintiff is claiming to have been altered, but it appears the Plaintiff is referring to some handwritten administrative notations across the very top of the exhibit.  These administrative notes are immaterial, however, because the Plaintiff acknowledged at oral argument that the material content of both copies of the Note (one copy submitted by Ms. Ball and one copy submitted by Plaintiff) were identical. Accordingly, this Court finds there is no basis under the Plaintiff's cross

## II.     STANDARD OF REVIEW

"Although a court will read a pro se plaintiff's complaint liberally, a pro se complaint, [no less than any other complaint], must present a claim on which the Court can grant relief." Chandler v. Rocheu, 215 F.Supp.2d 166, 168 (D. D.C. 2002) (citing McNeil v. United States, 508 U.S. 106, 113 (1993)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. (citations and quotations omitted). Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id.

When analyzing a 12(b)(6) argument, courts "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009). Next, courts look at any remaining well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." Id. The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." See id. at 1950, 1952.

When analyzing Plaintiff's complaint, the Court must take the plaintiff's factual allegations as true. Id. at 1949-50. However, a "formulaic recitation of the elements of a cause

---

motions [Docket No. 17 & 19] to disqualify Ms. Ball as attorney for Defendants Fryberger, Dunley and Hanka or to strike Ex.1 to Ms. Ball's Affidavit [Docket No. 7-1] from the record.

of action" is insufficient for a complaint to survive a motion to dismiss.  Id.  Still, facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard.  Twombly, 550 U.S. at 555.  In addition, courts "should read the complaint as a whole, not parsed piece by piece to determine whether each allegation in isolation is plausible."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

**III.    PLAINTIFF'S FTCA CLAIM**

Plaintiff brings a claim under the FTCA in Count One of his Complaint.  The Federal Trade Commission Act ("FTC Act") prohibits engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1).

However, as the Defendants correctly point out, the FTCA does not provide a private cause of action.  Morrison v. Back Yard Burgers, Inc., 91 F.3d 1184, 1187 (8th Cir. 1996); see also R.T. Vanderbilt Co. v. Occ. Saf. & H. Rev. Comm, 708 F.2d 570, 574-5 n. 5 (11th Cir. 1983); Fulton v. Hecht, 580 F.2d 1243, 1248-9 n. 2 (5th Cir. 1978); Holloway v. Bristol-Myers Corp., 485 F.2d 986, 1002 (D.C. Cir.1973); Carlson v. Coca-Cola Co., 483 F.2d 279 (9th Cir. 1973). Therefore, only the Federal Trade Commission can bring an action to enforce the statute.  Plaintiff, as an individual, cannot bring a private claim under this statute.

For these reasons, the Court recommends that Plaintiff's FTCA claim be dismissed.

**IV.    PLAINTIFF'S FDCPA CLAIM**

In Count Two, Plaintiff brings a claim under the FDCPA.  Specifically, Plaintiff inartfully alleges that the Defendants violated section 807(5) of the FDCPA, 15 U.S.C. § 1692e(5).  This statute prohibits debt collectors from employing harassing, false, deceptive, misleading, or otherwise unfair or unconscionable means to collect debt.  Peters v. Gen. Serv.

5

Bureau, Inc., 277 F.3d 1051, 1054 (8th Cir. 2002).  As a threshold matter, the FDCPA applies only to a "debt collector."  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 130 S.Ct. 1605, 1608 (2010).  The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The Act therefore is not limited in application to collection agencies, but rather "regulates the conduct of 'any person' in 'any business' whose (1) principal purpose is debt collection, or (2) who regularly collects or attempts to collect debts, indirectly or directly."  Romine v. Diversified Collection Servs., Inc., 155 F.3d 1142, 1146 (9th Cir. 1998) (citing 15 U.S.C. § 1692a(6)).  Thus, in the Complaint, the Plaintiff is "required to plead facts that would, if proved, establish their entitlement to relief on their FDCPA claim; in other words, they must plead facts establishing that [the Defendants are] are a 'debt collector' within the meaning of the Act."  Motley v. Homecomings Financial, LLC, 557 F.Supp.2d 1005, 1009 (D. Minn. 2008).

In this case, the Plaintiff has not alleged any facts in his complaint that any of the Defendants are engaged in a business the principle purpose of which is to collect debts or that any of the Defendants regularly attempt to collect debts as required by the FDCPA.  Instead, the Plaintiff merely states in a conclusory fashion that "FBSF [Fryberger] is a 'debt collector' as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6). Such allegations are nothing more than "labels and conclusions" which are not enough to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  Twombly, 550 U.S. at 555.

Additionally, the Defendants argue that even if the Complaint alleged enough facts to show that any of the Defendants were debt collectors, the claim would still not survive a motion

to dismiss because the Defendants "did not act in connection with the collection of any debt as required by the FDCPA in conducting the non-judicial foreclosure of Plaintiff's property. (FBSF Def.'s Mem., p. 11). Even though the Court does not have to reach this issue to decide the motion, the Court finds the Defendants' analysis equally persuasive.  This Court has previously found that Congress distinguished between the collection of debts and the enforcement of a security interest.  See Gray v. Four Oak Court Ass'n, Inc., 580 F.Supp.2d 883, 887-88 (D. Minn. 2008); see also Hulse v. Ocwen Federal Bank, FSB, 195 F.Supp.2d 1188, 1204 (D. Or. 2002) (foreclosure activities not debt collection activities); Acosta v. Campbell, 2006 WL 3804729, at *4 (M.D. Fla. Dec. 22, 2006) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not a debt collection activity for the purposes of the FDCPA").  In Gray, the Court held that "the enforcement of a security interest, including a lien foreclosure, does not constitute the 'collection of any debt.'" 580 F.Supp.2d at 888.  Therefore, because the Plaintiff's asserted claim is based on conduct relating to the enforcement of the mortgage lien attached to the Plaintiff's property, Plaintiff's complaint fails to state a valid claim for relief under the FDCPA.

As such, the Court recommends that the Plaintiff's FDCPA claim be dismissed.

### V.    COUNT III

In Count Three of Plaintiff's Complaint, he contends that the documents used to foreclose on his property are "counterfeit securities" citing 18 U.S.C. § 474.  Because the documents are allegedly false, the Plaintiff contends that there was a conspiracy to unlawfully take his property "through a foreclosure sheriff sale using counterfeit securities as evidence as a purported debt." (Compl. ¶ 18).   As evidence of the alleged falsity of the documents, Plaintiff claims that the documents are not the original note and mortgage because they lack a "wet ink signature." Id.

Additionally, Plaintiff alleges in a conclusory fashion without proper citation that "Many federal court cases have verified that it is a must requirement that the original Note and the original Mortgage are required for any Mortgage Company to establish legal standing before the court before foreclosure proceedings and the Sheriff Sale of the property can take place!" Id.

Construing Count III broadly, the Court interprets it as a claim under 18 U.S.C. § 474. This statute is entitled "Plates, stones, or analog, digital, or electronic images for counterfeiting obligations or securities." It makes it a felony to counterfeit "any obligation or other security of the United States." 18 U.S.C. § 474(a). This statute is inapplicable here because Plaintiff's claims involve a private mortgage transaction, not counterfeiting a monetary security of the United States. Moreover, the statute is a criminal statute and creates no private right of action for individual citizens, like the Plaintiff. See Barlow v. Chase Bank, 2011 WL 4708806, at *4 (E.D. Mich. Sept. 2, 2011); Adams v. CitiGroup Global Market Realty Corp., 2011 WL 219910, at *2 (E.D. Mich. Jan. 24, 2011); Lloyd v. Elizon Mort. Trust, 2011WL 236083, at *3 (N.D. Ohio Jan. 24, 2011). Thus, the Court recommends that Count III of Plaintiff's complaint be dismissed.[3]

## VI. PLAINTIFF'S FCRA, TILA, AND RESPA CLAIMS

Plaintiff alleges no facts in support of his FCRA, TILA, and RESPA claims in Count Four of his Complaint, but instead he simply asserts that "this Court is authorized to issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FTC ACT,

---

[3] Moreover, the Court notes that it is unpersuaded by Plaintiff's argument that an entity must present the original "wet ink" note and mortgage before foreclosure proceedings can ensue. Case law clearly holds that an original "wet ink" signature is not required to conduct foreclosure proceedings. See, e.g., Salmon v. Bank of Am. Corp., 2011 WL 2174554, at *6 (E.D. Wash. May 25, 2011); Stein v. Chase Home Fin., LLC, 2010 WL 4736828, at *3 (D. Minn. Aug. 13, 2010); Hintz v. JP Morgan Chase Bank, 2010 WL 4220486 at *2 (D. Minn. Oct. 20, 2010) ("The foreclosure statutes do not require production of the original note at any point during a foreclosure proceeding.") (citation omitted). Plaintiff has cited no contradictory legal authority.

FDCPA, FCRA, TILA AND RESPA, including the ability to order the disgorgement of ill-gotten monies." (Compl. ¶ 20).

The mere mention of a statutory act does not "state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570 (2007). Therefore, the Plaintiff's Complaint as to these allegations does not survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss. As such, the Court recommends that these claims be dismissed.

## VII. DEFENDANT LOVASS' MOTION

The Defendant Lovass joins in the other Defendants' motion. However, he also brings his own motion to dismiss alleging that no facts supporting any claim whatsoever against him have been asserted in the Complaint. The Court agrees. The Plaintiff has not asserted any facts against the Defendant Lovass. In fact, his name is not mentioned in the Complaint except in the caption. These allegations do not state a plausible claim for relief, and therefore, cannot survive a 12(b)(6) motion to dismiss.

## VIII. MISCELLANEOUS

Finally, this Court would briefly comment on those portions of Plaintiff's oral argument during the hearing on the present motions where he repeatedly asserted that defense attorneys, Ms. Stephanie A. Ball and Mr. Thomas G. Stanley, had committed a fraud upon this Court regarding the present motions and engaged in unethical misconduct by their involvement in the earlier state foreclosure proceedings. This Court finds that no scintilla of competent evidence has been presented to it which would support any assertion that either Ms. Ball or Mr. Stanley have engaged in any unethical misconduct before this Court whatsoever.[4] Moreover, it is evident on the record before this Court that neither Ms. Ball nor Mr. Stanley had any personal involvement in the earlier foreclosure proceeding involving Plaintiff's property. Accordingly,

---

[4] See, Footnote 2, supra.

there is nothing in the record before this Court which would either support or justify Plaintiff's oral arguments besmirching the professional character of attorneys Ball and Stanley.

**IV. CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein,

1. IT IS HEREBY RECOMMENDED that Defendants' Motions to Dismiss [Docket Nos. 4 & 11] be GRANTED;

2. That the Plaintiff's Complaint be DISMISSED With Prejudice as to Counts One through Three; and

3. That the Plaintiff's Complaint be DISMISSED without Prejudice as to Count Four.

Dated: November 7, 2011  s/ Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by November 21, 2011**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.